c

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff | CIVIL DOCKET NO. 1:24-CR-00260 |
| VERSUS | JUDGE DRELL |
| BYRON XAVIER WHITEHEAD, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Motion for Emergency Stay and for Review and Revocation of a Release Order (the "Motion for Review") filed by the United States of America ("the Government"). ECF No. 39. The Government seeks revocation of the order releasing Defendant Byron Whitehead ("Whitehead") on bond and conditions issued in the Central District of California (the "Release Order"). ECF No. 41-9.

Because Whitehead has not rebutted the presumption that no combination of conditions will assure his appearance at trial and the safety of the community, and because the factors set forth in 18 U.S.C. § 3142(g) weigh in favor of detention, the Motion for Review should be GRANTED and Whitehead detained pending trial.

I. <u>Background</u>

Whitehead is charged by superseding indictment with one count of Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and one count of Conspiracy to Distribute and Possess with intent to Distribute Fentanyl. ECF No.

1

24. Whitehead was arrested in the Central District of California (the "CDCA"), where he resides.

The Government argues that Whitehead should be detained because his release would pose both a risk of flight and a danger to the community. The Government also invokes a rebuttable presumption that detention is warranted under 18 U.S.C. § 3142(E)(3).

On July 23, 2025, Whitehead had his initial appearance and a detention hearing in the Central District of California. At that early point, neither party offered testimony. Instead, the Government proffered the arrest warrant and a pretrial services report. The presiding magistrate judge denied the Government's motion to detain Whitehead, and ordered that he be released on bond and subject to conditions.

The Government then filed the pending Motion for Review under 18 U.S.C. § 3145. This Court stayed the Release Order and set a detention hearing for August 20, 2025 on the Motion for Review. At that hearing, both the Government and Whitehead offered additional testimony and evidence and affirmed that the record was complete. ECF No. 50.

Officer Patrick Deshautelle ("Deshautelle"), a Louisiana State Police officer and FBI taskforce officer, testified for the Government. He sexplained that, while investigating the alleged narcotics trafficking activity of co-Defendant Arthur Gordon ("Gordon"), taskforce officers learned that Gordon's supplier was based in California. They reviewed text messages from Gordon's phone from various numbers listed as "Cali Main," "Cali 10," and "Cali 11." The messages contained what officers believed

2

to be coded references to, and details of, narcotics transaction. They also uncovered several money transfers to then-unidentified individuals—several of whom were associated with auto part or repair dealers—totaling $16,000.

Subsequently, officers concluded that Whitehead was the individual associated with the "Cali" and related profiles. They learned that Gordon had received packages from California containing children's toys with large quantities of narcotics hidden inside them. Messages between Cali and Gordon arranged for a delivery. Officers surveilled the delivery and eventually obtained a warrant to search Gordon's home. They discovered packages shipped from California and addressed from "Caliman," a plastic school bus, over seven pounds of methamphetamine, and 222 suspected fentanyl pills. Officers then traced phone numbers and iCloud information recovered on Gordon's phone back to two businesses and two individuals. Whitehead was one of those individuals, and his business, "Gooneyz Auto Sales." A confidential informant also told officers they had observed Gordon facetiming with Whitehead to discuss a shipment of methamphetamine.

Whitehead called two witnesses, his wife Kimberly Perry and his mother-in-law Sandra Perry. Kimberly Perry testified she had known Whitehead for over thirty years and that they married this month. Mrs. Perry testified that she is willing to serve as his third-party custodian. She lives in California with Whitehead, where they rent a home. Mrs. Perry is an accountant, working from home Monday through Wednesday, and at a separate office on Thursday and Friday. She testified that Whitehead is a car salesman, owns Gooneyz Auto Sales, and has always lived in

3

California. Whitehead introduced a license to sell cars and a wholesale vehicle dealer license as Exhibits 1 and 2 respectively, under seal.

Kimberly Perry also testified about Whitehead's health conditions. He has a condition known as Polycythemia, which requires him to have his blood drawn every week to every other week. Whitehead introduced supporting medical records into evidence as well.

Moreover, Kimberly Perry testified that, before his arrest in California, Whitehead had reason to suspect he would be arrested at his next meeting with his probation officer. Still, he appeared at the meeting voluntarily and was, in fact arrested.

In addition to those witnesses and exhibits, the Court also heard argument about and considered the pretrial services report. The report indicates that Whitehead was last convicted of a similar offense in 2006, and that more recently, several bench warrant for Whitehead have been issued in connection with misdemeanor charges.

II.   Law & Analysis

   A.   Pretrial Detention

Under 18 U.S.C. § 3145, the Court must conduct a *de novo* review of the challenged release order and make an independent determination of proper pretrial detention or conditions for release. *U.S. v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985); *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992); *United States v. Moore*, 2025 WL 1839511 *2 (W.D. La. 2025).

Pretrial detention is governed by the standards set forth under the Bail Reform Act, 18 U.S.C. § 3142. "A judicial officer may order a defendant detained pending trial upon a finding by a preponderance of the evidence that 'no condition or combination of conditions will reasonably assure the appearance of the person,' or by clear and convincing evidence that 'no condition or combination of conditions will reasonably assure ... the safety of any other person and the community.'" *United States v. Acosta-Leyva*, 751 F. App'x 594, 595 (5th Cir. 2019) (quoting 18 U.S.C. § 3142(e)). In making this determination, a court must cconsider: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics including, among other things, his family ties, length of residence in the community, community ties, and past conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." *Id.* (citing 18 U.S.C. § 3142(g)).

If penalties for an offense include a term of imprisonment of ten or more years under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, there is a rebuttable presumption that "no combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e). This "shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion; however, the mere production of evidence does not completely rebut the presumption." *United States v. Rueben*, 974 F.2d at 586.

Here, a presumption in favor of detention applies. Whitehead is charged with a narcotics offense for which the maximum possible term of imprisonment exceeds 10

5

years. *See United States v. Trosper*, 809 F.2d 1107 (5th Cir. 1987) ("Indictment charging defendant with drug crimes was sufficient to raise presumption that no conditions of bail could assure his appearance and protect the safety of the community."). Whitehead rebutted that presumption, however, through cross-examination, exhibits regarding Whitehead's business, and the testimony of both witnesses indicating that Whitehead is not violent or dangerous. Accordingly, the presumption is not controlling, but "nevertheless remains in the case and is a factor to be considered." *United States v. Fortna*, 769 F.2d 243 at 251; s*ee also Hare*, 873 F.2d at 798-99 (5th Cir. 1989) ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society.").

The remaining factors, on balance, favor detention. First, Whitehead is charged with serious and inherently dangerous offenses. These offenses involved the alleged distribution of two particularly dangerous drugs, methamphetamine and fentanyl, which are destructive to the community and potentially lethal. If convicted, Whitehead may face a minimum sentence of 10 years in prison and a maximum sentence of life in prison. Based upon danger, the first factor thus favors detention for danger to the community. *See United States v. McZeal*, 2023 WL 6798134, at *3 (W.D. La. Oct. 13, 2023) ("The severity of the potential sentences emphasizes the nature and circumstances of the charged offenses.").

The weight of the evidence presented also favors detention. Officer Deshautelle testified that while examining Gordon's phone, they discovered coded text messages from several phone numbers listed as variations of "Cali," such as "Cali Main," "Cali

6

10," "Cali 11" etc. (collectively "Cali"). Some of the messages referenced going "shopping at the warehouse" and "needing t-shirts," which officers believe to be slang for narcotics. Some cash app receipts found on Gordon's phone referenced Cali.

On cross-examination, counsel for Whitehead raised questions about the import of information received from the confidential informant, and elicited testimony indicating that no money transferred were made to Whitehead individually. However, several money transfers were associated with car parts, and one transfer was made to an "Elaine Whitehead." Subsequent messages between Gordon and Cali coordinated delivery of a package to a Palmetto, Louisiana address. On executing the search warrant of Gordon's home, officers found packages from Cali and eventually recovered large amounts of narcotics from Gordon's possession.

Deshautelle explained that they had investigated the Cali Main number, and it came back to a "City to City Delivery Service, LLC" subscriber. The email addresses associated with messages on the iCloud account on Gordon's phone were associated with Gooneyz Auto Sales, Hector Gonzalez, City to City Delivery Service, LLC, and Byron Whitehead. These findings, coupled with information from the confidential informant who allegedly saw Whitehead Facetime with Gordon to discuss an overnight shipment of methamphetamine, led officers to conclude Whitehead was likely a supplier. As counsel for Whitehead argued, much of the evidence adduced at the hearing was circumstantial. But on balance, the balance of the record evidence favors detention.

7

Further, Whitehead's history and characteristics—although a mixed factor—also favor detention, in large part because they indicate that Whitehead could pose a risk of flight. The evidence indicates that Whitehead has at least some relevant (though dated) criminal history, including a felony conviction for second degree robbery and a controlled substance violation. And while almost no context could be offered regarding the more recent bench warrants, at bare minimum, they do not indicate a history of compliance with legal proceedings and orders. He also has a history of bench warrants.

Mrs. Perry did testified essentially that Whitehead appeared for a meeting with his probation officer likely knowing that he could be arrested, that fact can be given only limited value. His attendance, of course, was compulsory; again, little context could be offered about his knowledge of the potential arrest; and circumstances have changed drastically given the ongoing prosecution, the extent of which is now clear. Whitehead has no other ties or connections to this district or state. His roots, present life, business, family, and resources are all in California.

Finally, as noted above, the nature of the alleged offense involved the distribution of dangerous narcotics which pose arguably unique risks to the community. The Court found the testimony of both defense witnesses—one of whom volunteered to serve as a third-party custodian—credible and well-intentioned. But given the seriousness of the charges and other issues discussed above, the relative sophistication of the alleged activity, and the lives and responsibilities of the defense witnesses discussed at the hearing, custodianship is not a condition that overcomes

the contrary evidence in this case. Nor would any other combination of conditions give the Court the assurances it must have under the Bail Reform Act after the Government satisfied its burden of proof both as to danger and as to flight risk.

Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the Government's Motion for Emergency Stay and for Review and Revocation of a Release Order (ECF No. 39) be **GRANTED.**

Under 28 U.S.C. § 636(1)(c) and Fed. R. Civ. P. 72(b), <u>and given the circumstances of this particular</u> case, the parties will file any warren objections to this Report and Recommendation <u>on or before August 26, 2025</u>. within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Friday, August 22, 2025.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE